On Petition for Rehearing.
CLAIBORNE, Judge ad hoc. In their application for a rehearing the defendants charge, with much vehemence, that they had filed an exception of no cause of action, that they were entitled to a judgment upon it and that we failed to pass upon it. We were under .the impression that we had done so; for, while we expressed the opinion that after the defendants had caused the case to be fixed upon the merits, and after they had gone into the .trial of the case upon the merits it was too late for them to ask for a separate judgment upon the exception, we passed upon it, and expressly stated that we thought the petition did set forth a cause of action, and that the judge a quo was right in overruling the exception. If the defendants mean that we did not give sufficient reasons for our conclusion,' we thought we had done so in disposing of the case on the merits. But they are not wanting, and we shall add them to the reasons already given.
Defendants pitch their case upon the proposition set forth on page 31 of their brief for a rehearing in these words:
“Hence the only question presented by the exception of no cause of action is this: Must the olographic testament speak for itself and express its date with certainty and precision upon its face, or may an uncertainty or doubt as to the date, appearing on the face of the instrument, be removed by testimony as to when the document was or must have been written?”
We are all agreed upon .the proposition that an uncertain date is equivalent to no date, and that a document with no date, or with an uncertain date, cannot be a valid will. But the question at once arises, What is an uncertain date?
There is a physical difference between a document without a date and one with an uncertain date. There is a legal difference between supplying a missing date, or any part of it, by facts outside of the will/and establishing certainty concerning an ambiguity or uncertainty or doubt in an existing date. The former cannot be done, because it is of the essence of the validity of a will that'it be dated “by the hand of the testator” (C. O. 1588 [1581]), and it cannot be “dated” in any other way. But there is no law that prevents the courts from hearing ‘testimony and entertaining evidence to throw light upon an obscure date, and remove all doubt, uncertainty, or ambiguity concerning it. 'Reason dictates it, and justice demands it, in order that the right accorded by law to make a will shall be protected, and not defeated by technicalities. Any evidence, recognized by law and not expressly prohibited by statute, calculated to convince the court and establish the 'certainty of the date, should be admitted and heard. The whole question resolves itself into a matter of proof. If the uncertain date can be made certain by'other parts of the will or by any other means, it ceases to be uncertain and becomes certain and valid. “Id certum est quod certum reddi potest.” If the evidence fails in its object, and the date remains uncertain, then the *80 document wants the requisites of the law, and it is not a will. An uncertain date is therefore a date which cannot be made certain. The Code provides (C. C. 1714 [1707] to 1716 [1709]) that in case of an ambiguity or obscurity in the description of a legatee, or in the intention of the testator, or in the object bequeathed, testimony shall be heard to remove the ambiguity and establish certainty in the name of the legatee, the thing bequeathed, or the intention, in order that the will of the deceased shall be executed. Why should not an uncertainty in the date of a will be corrected by 'the same reason and by the same evidence V We believe that such a course is authorized by the opinions in the Successions of McDonogh, 18 La. Ann. 419, and Gaines, 38 La. Ann. 123, and other authorities quoted in our original opinion. Those decisions submit all wills attacked for nullity to all such proof as prevail in all contested facts or cases. It is an elementary rule of evidence that a writing in which there is no ambiguity cannot be interpreted by parol; but that an ambiguity in any of its parts, as to names, identity of parties, meaning of words, quantity, extent, or nature of thing sold or leased, consideration, value, may be removed by any evidence known to the law. 1 H. D. vo. Evidence, XV (3).
We have examined many French commentators on article 970 of the Code Napoleon, and we do not understand that .they conflict with our views on the question of elucidation of uncertainties in the date of wills. Of course the date, as well as the dispositions, of the will must appear from the will. “Ex ipsomet testamento non aliunde, non extrinsecus.” But they agree that an erroneous or an uncertain date, like ambiguities in dispositions, may be corrected or made certain by other parts of the will, or by recitations and circumstances appearing upon the face of the will, which may be corroborated by other facts and circumstances outside of the will.
According to them, a will may be dated on the anniversary of any religious, matrimonial, or family event, the date of which may be ascertained by extraneous evidence; such as the anniversary of the birth of Washington, Easter Sunday, anniversary of the marriage of the testator, or of the birth of his child. 7 Aubry & Rau, p. 103, No. 2; 10 Baudry-Lacantinerie, p. 51, Nos. 1933, 1934; 21 Demol. (4 Don. et Test.) No. 83, p. 77; 9 Duranton, p. 29, No. 30; 16 Dalloz, Rep. de Leg. p. 757, Nos. 2654, 5, 6; Fuzier-Ilerman on C. N. 970, p. 656, Nos. 116, 117; 1 Grenier, No. 228 bis. p. 486; 13 Laurent, Nos. 194, 199; 33 Merlin, Rep. p. 352; 5 Toullier, No. 365, p. 342; 3 Troplong, p. 46, No. 1482.
They go further and say that a correct date may be substituted for a wrong date written upon the will, when it is the result of an error shown by the language of the will which may' be corroborated by proof outside of the will.
We read in 10 Baudry, p. 61, § 1957:
“Whenever the material conditions of the testament or its declaration furnish elements sufficient to rectify or complete the date that is upon it, courts may fortify and corroborate them by facts or documents taken outside of the will. Authors and decisions agree to acknowledge this” — quoting 7 Aubry & Rau, p. 104, § 668; 21 Demol. (4 Don. et Test.) No. 86, pp. 79, 80, 90, 93, 98-; 13 Laurent, No. 199, and the authors quoted in Fuzier-Ilerman on article 970, Nos. 233, 234, and 278, and decisions of the Court of Cassation. See, also, same Baudry, p. 77, § 1999.
To which we desire to add the following: 5 Toullier, No. 362, pp. 333, 335; 9 Duran-ton, 35, 36, 39; 33 Merlin, Rep. vo. Testament, § II, p. 1, art. 6, note 10, pp. 356, 365; 16 Dalloz, Rep. Leg. p. 760, No. 2664 and note 1, No. 2668 and note 3, No. 2690 and note Nos. 2692, 2693.
In 21 Demol'ombe, p. 90, § 98:
“Much more! nothing would prevent the judges from having recourse to the proof drawn out *82 side of the will, in order to determine the true meaning of the statements which would go to rectify the date. This rectification, indeed, would not cease to result from the intrinsic statements of the will, since the extrinsic facts would have been appreciated only with the object of clearing up the statements themselves.”
And on page 32, § 37, of the same author:
“Our conclusion is very exact, in so far as it expresses this idea that it is the testament alone which can create the dispositions, and that it is always within the testament that the substance must be found. But our conclusion would become, on the contrary, altogether false, if any one pretended to deduce from it that it is not allowed to have recourse to any extrinsic proof in order to interpret the dispositions; and to draw out more clearly from the obscure terms of the testament the clauses in which the substance is confined.”
22 Demolombe, p. 217, § 253:
“Testimonial proof and presumptions are, on the contrary, according to us, admissible to_ establish by whom the erasure or cancellations have been made, because there is no question of establishing a legal mode of revocation; we are then in presence of a fact, and it is in the search of that fact and of the circumstances which may furnish the explanation of it, that the judges have to provide for,” etc. 10 Baudry-Dacantinerie, No. 2787, p. 386; 14 Laurent, § 242, p. 267; 2 Dalloz, Codes Ann. on article C. N. 1036, p. 758, Nos. 218, 223, 228.
2 Fuzier-Herman, p. 668, No. 278:
“In order to rectify a false date, the judges may, nevertheless, in 'the same manner as to establish that it is false, corroborate the proofs drawn from the testament by facts extrinsic from the act by considering their relations to the testament and as a means of appreciating their bearing. ' In other words, the indications, already conclusive by themselves, furnished by the testament can always be completed by other documents.” Authorities.
No. 279;'
“Thus, in case there is doubt concerning the true date of. an olographic will, the judges may, in order to determine the date, take into con.sideration documents taken outside of the testament itself; such, for example, as an act of superscription written upon the envelope of the will, although such an act is foreign to the legal form of olographic testaments.” Authorities.
In 16, Dalloz Rep. de Leg. p. 760, No. 2664, we read: •
“We shall see further on (Nos. 2682 et seq.) what courts can do to rectify a false date. If instead of a false date, the case is one of a doubtful date, for instance by reason of the bad handwriting of the testator, the judges should be guided first by an examination of the act by itself, by invoking in case of necessity, the experience of experts. They are not forbidden to add to this verification the assistance of the external circumstances which might assist them to fix the veritable date.”
Note 1 to this section contains the reasons for judgment in a case reported in 24 Journal du Palias (1831-1832) p. 1646, entitled Corras v. Frouin, the court said:
“Considering that this testament, registered at Blaze on January 20, 1811, the original of which was placed under the eyes of the court, has been entirely written, dated, and signed by the hand of the testatrix; that therefore, and on this first proposition, there can be no cause to declare it null for a pretended absence of date; considering that the only difficulty which is raised relative to the veritable date of said testament consists in that, according to Mr. and Miss Corras, it is dated March 5, 1811, while according to Mr. Frouin, it is dated May 5th of said year; considering, in relation to this difficulty, that by an inspection of the will in question there can be no doubt that it is dated May 5, 1811, and not of March 5th; that the letter T which terminates the word which indicates the month of May. although it is preceded immediately by an ill-formed letter which may as well be taken for an T as for an ‘R,’ does not prevent recognizing that the act is dated in the month of May, and not in the month of March, 1811; considering that what completely operates a conviction in this regard, is that the act of superscription which exists_ on the paper which has served as a cover .to said testament, which act is also entirely written, dated, and signed by the hand of the testator, contains, in very legible writing, the date of May 5, 1811, and that we cannot read in it that of March 5th; that in truth, the above-mentioned superscription is altogether outside of the rules prescribed by law concerning the form of olographic testaments, but that, the case being solely to arrive at a thorough knowledge of the date of such a testament, the existence of an act of superscription, such as the one which is produced in this case, cannot be other than of the greatest influence, at least in this sense that said act must necessarily serve to real and to fix with precision the veritable date of the testament to which it refers — from all of which it evidently follows that the olographic will of M. D. must have all its effect in favor of Pierre Frouin, her universal legatee, as being of May 5, 1811.”
Sec. 2668:
“It is also in pursuance of this principle that it is allowed to take a time more or less long to make a testament that it has been decided that an olographic testament is valid, although the date was not affixed by the testator at the same moment as the making of the will, and that; *84 after a first date erased there is found a posterior date.”
Where a testament was dated, thus: “Made in Bordeaux this May 20, 1818, I say 1829,” the testament was held dated “1829,” because the will gave the testator’s age, and because:
“Hence it follows that the indication of the year ‘1818’ is rectified by the will itself, but that the testator has removed all doubts by these expressions: T say 1829,’ following the indication of the year 1818i” Same Dalloz, p. 768, No. 2690, note 2.
A familiar example given by all French authors by which a date may be ascertained are the dates of the stamped paper upon which the testament has been written, established by the water lines on the paper.
It does not follow that because a date has been overcharged or surcharged, or other figures superimposed upon it, it destroys the date, or makes it fatally uncertain.
The law in relation to overcharge and erasures is the same. 10 Baudry, § 1910, p.-. “Overcharges written by the testator are valid.” 7 Aubry, p. 105, § 668.
.16 Dalloz puts it thus, in same volume, p. 759, No. 2661:
“Would the date become uncertain by the mere fact that it would present surcharges? Surcharges, in the date, would annul a notarial testament; but it is not the case with olographic testaments, concerning which we must admit a distinction. If the date is surcharged in such a manner as to indicate two different days, two different years, so that we cannqt see what is the veritable date, the uncertainty will cai-ry with it the nullity of the will. If the surcharge permits one to read distinctly the date surcharged, the act must, according to us, remain valid.” Authorities.
See, also, 10 Baudry-Lacantinerie, p. 52, No. 1936, p. 362, No. 1960; 21 Demol. (4 Don. et Test.) Nos. 86, 131, 139; 5 Toull. No. 367, p. 342; 13 Laurent, § 190, p. 202; 9 Donation Nos. 28, 29, 37-3. Trop. No. 1474-1482; 33 Merlin, p. 356, No. IX; 1 Grenier on Donations, p. 501, No. 228 (Sept.) 228 bis. p. 486.
We think we have sufficiently shown that the nullity of the will of the deceased did not result from the possible uncertainty of the date of the will propounded, but that the date could be made certain in the manner we have indicated hereinabove. It follows that the exception of no cause of action filed by the defendants was not well founded in law, and was properly overruled.
In line with all these authorities we consulted and examined the will before us. , We noticed the lines drawn across the paper upon which it was written which a witness swore had been drawn by her subsequent to 1908; we gave due weight to the date “1913,” written by the testatrix upon the envelope containing her will; we read the enunciations contained in the will itself and the testimony corroborating them; we studied the figures composing the dates, and the testimony of the expert in relation thereto, and then formed our own conclusions in accordance with what we believed was the law and the evidence in the case.
We are satisfied that the figure in the right of the figure “2” is a “6” and not a “G,” because persons are presumed to usé numerals and not letters in completing a date, and that the figure is really a “6.”
Our observation has led us to conclude with the expert that the figures “08” were superimposed upon the figures “13.” If we assume, with the plaintiffs, that they were so overcharged by the hand of another, they must be considered as not written. If, as argued by the defendants, they were written by the testatrix, then they must be considered as erasures. As such, they have not been approved by the testatrix, and they must be considered as not made. G. O. 1589 (1582). This leaves the figures “13” under them in full force and effect.
But if we are mistaken in these conclusions, and if the surcharge still leaves the year of the date uncertain as to which was written first or last, or which was surcharged, then the figures “1913,” which we believe to' be in the handwriting of the deceased, *86 immediately following, remove the uncertain■ty and fix "the date as of that year. A testament is a law unto the courts, and their ■duty is to interpret it in the sense in which It can have effect, rather than in that in which it can have none. C. C. 1713 (1706).
An examination of the brief on behalf of the heirs of Rev. James H. Trainor has not changed our opinion in respect to his claims. We do not think that this case comes under the operation of article 1573 (1566) C. C., quoted by .his learned counsel. By applying the provisions of article C. C. 1721 (1714) to .the will, we indicated that we did not think that article C. 0. 1722 (1715) governed the case as he argued.
For these reasons, the rehearing is refused.